1

2

3

4

5

6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11   MACLELLAN INDUSTRIAL SERVICES,          No. C06-04021 MJJ

12            Plaintiff,                     **ORDER DENYING PLAINTIFF'S
                                             MOTION FOR PRELIMINARY
13      v.                                   INJUNCTION AND GRANTING UAW'S
                                             MOTION TO INTERVENE**
14   LOCAL UNION NO. 1176, ET AL,

15            Defendant.
     _____/

16

17                        **INTRODUCTION**

18       Before the Court is Plaintiff MacLellan Industrial Services, LLC's ("Plaintiff" or

19   "MacLellan") Motion for Preliminary Injunction[1].  Defendants Local 1176, affiliated with District

20   Counsel 16 ("Defendants" or "Painters Union") and third-party International Union, United

21   Automobile, Aerospace & Agriculture Implement workers of America, AFL-CIO, CLC's ("UAW")

22   oppose the motion for preliminary injunction.  Also before the Court is UAW's Motion to

23   Intervene[2].  Plaintiff opposes the motion to intervene.

24       For the following reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction

25   and **GRANTS** UAW's Motion to Intervene.

26                     **FACTUAL BACKGROUND**

27       Defendants assert this case presents a labor dispute between Plaintiff MacLellan and two

28

       [1]Docket No. 4, Filed June 30, 2006.

       [2]Docket No. 9, Filed August 1, 2006.

**United States District Court**
For the Northern District of California

United States District Court

For the Northern District of California

labor unions.  Plaintiff insists this case presents a contractual dispute, regarding the anticipatory breach of the collective bargaining agreement ("CBA") covering Plaintiff's employees who work at the New United Motor Manufacturing, Inc. ("NUMMI") north plant.

Plaintiff MacLellan is a company that specializes in cleaning paint booths in automotive plants.  Plaintiff currently provides these services to NUMMI's north plant.  Defendant Painters Union is an association of labor unions and currently serves as the exclusive bargaining representative for Plaintiff's employees who work at NUMMI's north plant.  UAW is a competing labor union that has previously served as the bargaining agent at NUMMI's facilities.

On January 13, 2006, Plaintiff and the Painters Union entered into a CBA covering the terms and conditions of the employees working at NUMMI's north plant.  The CBA provided that it would be in force for one year from January 13, 2006 through January 10, 2007, and continue from year to year until proper notice of termination.

UAW claims to have a long-standing collective bargaining relationship with Premiere Manufacturing Support Services, Inc. ("Premier").  Like Plaintiff, Premier has contracted with NUMMI to manage some of its booth cleaning operations.  UAW members employed by Premier had traditionally cleaned NUMMI's north plant.  However, in January 2006, NUMMI sub-contracted the cleaning work at NUMMI's north plant to Plaintiff, thereby displacing Premier from the NUMMI north plant.  Plaintiff then entered into the January 13, 2006 CBA with the Painters Union to cover NUMMI's north plant.

On March 17, 2006, the UAW initiated proceedings under the AFL-CIO Internal Disputes Plan against the Painters Union ("AFL-CIO proceeding") for alleged violations of the AFL-CIO's constitution.  On May 19, 2006, an impartial umpire ruled that the Painters Union had violated the AFL-CIO constitution by taking over the UAW work at NUMMI's north plant.  As a result of that decision, on June 22, 2006, the Painters Union informed Plaintiff that the Painters Union was disclaiming representation of the bargaining unit they had agreed to represent in the CBA.

Plaintiff now seeks a preliminary and permanent injunction restraining and enjoining the Painters Union from disclaiming representation of the bargaining unit and from repudiating the CBA.  Plaintiff also seeks a declaratory judgment that the CBA is valid and enforceable between the

**United States District Court**
For the Northern District of California

1    parties as written until such time as it is properly terminated.  UAW seeks to intervene in the action.

2                                                          **LEGAL STANDARD**

3    **I.    Intervention**

4            Intervention is a procedure by which someone not a party to a pending lawsuit can gain party

5    status without the consent of the original parties.  There are two types of intervention, both of which

6    require a timely application: (1) intervention of right; and (2) permissive intervention.  Fed. R. Civ.

7    P. 24.

8            Intervention of right shall be permitted when either federal statute confers the unconditional

9    right to intervene in the action, or when the applicant claims an interest which may, as a practical

10   matter, be impaired or impeded by disposition of the pending action, and that interest is not

11   adequately represented by existing parties.  Fed. R. Civ. P. 24(a).  In determining whether the

12   applicant's interest may be impaired or impeded, and whether the interest is not adequately

13   represented by the existing parties, the court engages in a four-part test.  *Arakaki v. Cayetano,* 324

14   F.3d 1078, 1083 (9th Cir. 2003); *League of United Latin Am. Citizens v. Wilson*, 131 F.3d 1297,

15   1302 (9th Cir. 1997).  The intervening party: (1) must timely apply; (2) must have a "significantly

16   protectible" interest relating to the property or transaction involved in the pending lawsuit; (3) must

17   show that disposition of the lawsuit may adversely affect applicant's interest unless intervention is

18   allowed; and (4) must show that the existing parties do not adequately represent the would-be

19   intervenor's interests.  *See Cayetan,* 324 F.3d at 1083; *Cabazon Band of Mission Indians v. Wilson*,

20   124 F.3d 1050, 1061 (9th Cir. 1997) (stating four-part test "interpreted broadly in favor of

21   intervention").

22           Permissive intervention may be allowed in the court's discretion when either a federal statute

23   confers a conditional right to intervene, or the applicant's claim or defense and the main action

24   involve a common question of law or fact, and allowing intervention "will not unduly delay or

25   prejudice the adjudication of the rights of the original parties."  Fed. R. Civ. P. 24(b).  Permissive

26   intervention is a two-step process.  First, the court must decide whether one of the grounds for such

27   intervention exists.  Second, if this threshold requirement is met, the court must then exercise its

28   discretion in deciding whether intervention should be allowed.  The most common ground for

                                                                3

1   permissive intervention is that the "applicant's claim or defense and the main action have a question

2   of law or fact in common."  W. Schwarzer, A. Tashima, & J. Wagstaffe, *Federal Civil Procedure*

3   *Before Trial*, § 7:241 (2006); Fed. R. Civ. P. 24(b)(2).  Once the conditions for permissive

4   intervention are met, intervention rests in the sound discretion of the court.  The court is entitled to

5   consider other factors in deciding whether intervention is appropriate.  *Donnelly v. Glickman*, 159

6   F.3d 405, 409 (9th Cir. 1998).  Such factors include delay or prejudice to the original parties,

7   timeliness, and judicial economy.  *See Federal Civil Procedure Before Trial*, § 7:254; Fed. R. Civ.

8   P. 24(b).

9        The Ninth Circuit broadly construes Federal Rule of Civil Procedure 24 in favor of

10  applicants for intervention.  *See United States v. Stringfellow*, 783 F.2d 821, 826 (9th Cir. 1986),

11  *rev'd on other grounds*, 480 U.S. 370 (1987).  Rule 24 traditionally has received a liberal

12  construction in favor of applicants for intervention.  *Glickman*, 159 F.3d at 409.  In evaluating a

13  motion to intervene, the district court must accept as true nonconclusory allegations of the motion

14  and proposed complaint in intervention. *Southwest Center for Biological Diversity v. Berg*, 268 F.3d

15  810, 819 (9th Cir. 2001).  After intervention, the intervenor has full party status, including the right

16  to engage in discovery, to participate at trial, and to appeal the judgment.  *See Int'l Union of Mine,*

17  *Mill & Smelter Workers v. Eagle-Picher Mining & Smelting Co.*, 325 U.S. 335, 338 (1945); *United*

18  *States v. California Mobile Home Park Mgt. Co.*, 107 F.3d 1374, 1378 (9th Cir. 1997).

19  **II.    Preliminary Injunction**

20       A preliminary injunction is a provisional remedy issued prior to final disposition of the

21  litigation.  Its function is to preserve the status quo and to prevent irreparable loss of rights prior to

22  judgment.  *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984); *Los*

23  *Angeles Memorial Coliseum Comm'n v. Nat'l Football League*, 634 F.2d 1197, 1200 (9th Cir. 1980).

24       A party seeking a preliminary injunction must show either (1) a combination of probable

25  success on the merits and the possibility of irreparable injury or (2) the existence of serious

26  questions going to the merits and that the balance of hardships tips in its favor.  *Roe v. Anderson*,

27  134 F.3d 1400, 1401-02 (9th Cir. 1998), *aff'd*, *Saenz v. Roe*, 526 U.S. 489 (1999).  These

28  formulations represent "two points on a sliding scale in which the required degree of irreparable

*United States District Court*
For the Northern District of California

harm increases as the probability of success decreases." *United States v. Odessa Union Warehouse Co-op*, 833 F.2d 172, 174 (9th Cir. 1987). However, "even if the balance of hardships tips decidedly in favor of the moving party, it must be shown as an irreducible minimum that there is a fair chance of success on the merits." *Johnson v. Cal. State Bd. of Accountancy*, 72 F.3d 1427, 1430 (9th Cir. 1995) (citing *Martin v. Int'l Olympic Comm.*, 740 F.2d 670, 675 (9th Cir. 1984)). Depending on the nature of the case, the Court also may consider whether the public interest will be advanced by granting the requested relief. *Id.*; *see also Westlands Water Dist. v. Natural Resources Defense Council*, 43 F.3d 457, 459 (9th Cir. 1994).

**ANALYSIS**

**I.      UAW's Intervention as of Right**

UAW argues that Plaintiff failed to inform the Court of UAW's interest in this case. UAW contends that Plaintiff's action, if successful, will nullify the umpire's decision in the AFL-CIO proceeding, render the AFL-CIO hearing meaningless, and strip the UAW members of their contractual right under the AFL-CIO constitution. Therefore, UAW insists that it has a significant protectable interest in the outcome of the matter and that its interests are inadequately represented by the current parties.

Plaintiff counters that UAW cannot meet the prerequisites to intervene as of right. In particular, Plaintiff insists that UAW does not have a significantly protectable interest related to the transaction which is the subject of the action. Plaintiff maintains the subject matter of the action is its CBA with the Painters Union, of which UAW is not a party. Plaintiff points out that UAW does not claim to be the exclusive bargaining representative for Plaintiff's employees, and therefore UAW's alleged interests of protecting its rights under the AFL-CIO constitution are outside the scope of this action.

**A.      Timeliness**

Timeliness is "the threshold requirement" for intervention as of right. *United States v. Oregon*, 913 F.2d 576, 588 (9th Cir. 1990). If a court finds "that the motion to intervene was not timely, [it] need not reach any of the remaining elements of Rule 24 ." *Wilson*, 131 F.3d at 1302 (quoting *United States v. Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996)). In determining whether

**United States District Court**
For the Northern District of California

1   a motion is timely, the court considers: (1) the stage of the proceedings; (2) the prejudice to other

2   parties; and (3) the reason for and length of the delay.  *United States ex rel. McGough v. Covington*

3   *Techs.*, 967 F.2d 1391, 1394 (9th Cir. 1992).  "[A]ny substantial delay weighs heavily against

4   intervention."  *Wilson*, 131 F.3d at 1302. (citations omitted).

5           Here, Plaintiff filed the action on June 28, 2006, and UAW filed the motion to intervene on

6   August 1, 2006.  UAW brought the motion at the outset of the litigation, before the issuance of a

7   pretrial scheduling order.  There is no evidence that the timing of UAW's intervention will prejudice

8   any existing party.  Accordingly, the Court finds that UAW timely filed its motion to intervene.

9           **B.       Protectable Interest in the Subject Matter**

10          In addition to filing a timely motion, applicant must show that it has an interest in the subject

11  matter of the litigation.  *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 527 (9th Cir. 1983).  UAW

12  argues that it had an established contractual work relationship, protected by the AFL-CIO

13  constitution, at NUMMI's north plant.  UAW asserts that if Plaintiff obtains the relief it seeks, the

14  Painters Union will be prevented from complying with the umpire's decision.  Plaintiff avers that

15  UAW's purported constitutional right is not related to the breach of the CBA between Plaintiff and

16  the Painters Union.

17          "An applicant has a 'significant protectable interest' in an action if (1) it asserts an interest

18  that is protected under some law, and (2) there is a 'relationship' between its legally protected

19  interest and the plaintiff's claims."  *Glickman*, 159 F.3d at 409.  Regardless of the phase of litigation

20  at which the interest arises, that interest must be related to the underlying subject matter of the

21  litigation."  *United States v. Alisal Water Corp.*, 370 F.3d 915, 920 (9th Cir. 2004).  The relationship

22  requirement is met "if the resolution of the plaintiff's claims actually will affect the applicant."

23  *Glickman*, 159 F. 3d at 410.  The "interest" test is not a clear-cut or bright-line rule, because "[n]o

24  specific legal or equitable interest need be established."  *Greene v. United States*, 996 F.2d 973, 976

25  (9th Cir. 1993).  Instead, the "interest" test directs courts to make a "practical, threshold inquiry,"

26  *id.*, and "is primarily a practical guide to disposing of lawsuits by involving as many apparently

27  concerned persons as is compatible with efficiency and due process." *County of Fresno v. Andrus*,

28  622 F.2d 436, 438 (9th Cir. 1980) (internal quotation marks and citation omitted).

*United States District Court*
For the Northern District of California

6

United States District Court

For the Northern District of California

Here, the Court finds that UAW has a sufficiently protectable interest in the subject matter of the action. The subject matter of this action, as defined by the operative complaint, is the enforceability of the CBA and whether the Painters Union may be enjoined from disclaiming representation of the bargaining unit and from repudiating the CBA. This matter concerns a breach of contract claim, the resolution of which directly affects the Painters Union's and UAW's competing contractual rights and the bargaining unit at NUMMI's north plant. Since the outcome of that subject matter will directly affect UAW's alleged contract rights, alleged AFL-CIO constitutional rights, and potentially affect the decision in the AFL-CIO proceeding, this Court finds that UAW has a sufficiently significant protectable interest in this action.

The Ninth Circuit and other courts have allowed intervention of unions in analogous cases, where similar contractual rights or union members' interests were at stake. *See United States v. City of Los Angeles*, 288 F.3d 391, 398-99 (9th Cir. 2002) (finding police officers' union had a protectable interest because the complaint sought injunctive relief affecting the union's members); *Californians for Safe & Competitive Dump Truck Trans. v. Mendonca*, 152 F.3d 1184, 1189-90 (9th Cir. 1998) (finding labor union entitled to intervene as of right to defend state prevailing wage law claim by employer reasoning that union had "significant interest" in its members receiving the prevailing wage for their services); *Little Rock Sch. Dist. v. Pulaski County Special Sch. Dist.*, 738 F.2d 82, 84 (8th Cir. 1984) (allowing teachers' union to intervene in action seeking consolidation of school districts because consolidation would affect union's rights under previously negotiated contracts).

Here, Plaintiff relies on *Alisal Water Corp.*, in arguing that UAW does not have a sufficient interest in this action. Plaintiff's reliance on *Alisal Water Corp.* is misplaced. In *Alisal Water Corp.*, the Ninth Circuit held that a judgment creditor could not intervene in an environmental suit where its only interest was prospective collectability of a debt secured by property at issue in the case. *See Alisal Water Corp.*, 370 F.3d at 920-21. The court reasoned that judgment creditor had no interest in the environmental subject matter of the lawsuit. *Id.* at 920. Instead, the creditor's interest in collecting its debt was "several degrees removed from the overriding public health and environmental policies that are the backbone of this litigation." *Id.* "To hold otherwise would create

an open invitation for virtually any creditor of a defendant to intervene in a lawsuit where damages might be awarded." *Id.* Unlike the judgment creditor in *Alisal Water Corp.*, UAW claims an interest in the primary issue in this litigation–the enforceability of the CBA and whether the Painters Union may be enjoined from disclaiming representation of the bargaining unit and from repudiating the CBA. The resolution of that issue bears directly on UAW's alleged contract right and does not implicate the policy concerns set forth in *Alisal Water Corp.*

### C.    Impairment of Interests

To meet the impairment prong, applicants need only demonstrate that "disposition of the lawsuit may adversely affect the applicant's interest if intervention is not granted." *United States v. State of Washington*, 86 F.3d 1499, 1503 (9th Cir. 1996). The Advisory Committee Notes for the 1966 amendments to Rule 24(a) explain, "[i]f an absentee would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene." Fed. R. Civ. P. 24 advisory committee's note to 1966 Amendments; *Southwest Center for Biological Diversity v. Berg*, 268 F.3d 810, 822 (9th Cir. 2001).

The relief sought by Plaintiff may affect UAW's interests. A decision enjoining the Painters Union from disclaiming representation of the bargaining unit and from repudiating the CBA, would both legally and practically affect UAW's alleged AFL-CIO membership-related contract right, UAW's constitutional rights under the AFL-CIO constitution, and UAW's rights under the umpire's decision in the underlying proceeding. For these reasons, the Court finds that disposition of this lawsuit may adversely affect UAW's interest unless intervention is allowed.

### D.    Inadequacy of Representation by Existing Parties

In determining whether a would-be intervenor's interests will be adequately represented by an existing party, courts consider: (1) whether the interest of a present party is such that it will undoubtedly make all the intervenor's arguments; (2) whether the present party is capable and willing to make such arguments; and (3) whether the would-be intervenor would offer any necessary elements to the proceedings that other parties would neglect. *Berg*, 268 F.3d at 822 (citing *California v. Tahoe Reg'l Planning Agency*, 792 F.2d 775, 778 (9th Cir. 1986)). The prospective intervenor bears the burden of demonstrating that the existing parties may not adequately represent

United States District Court

For the Northern District of California

its interest.  *Id.* (citing *Sagebrush Rebellion, Inc. v. Watt*, 713 F.2d 525, 528 (9th Cir. 1983)). However, the burden of showing inadequacy is "minimal," and the applicant need only show that representation of its interests by existing parties "may be" inadequate.  *Trbovich v. United Mine Workers*, 404 U.S. 528, 538 (1972).  In assessing the adequacy of representation, the focus should be on the "subject of the action," not just the particular issues before the court at the time of the motion. *Sagebrush*, 713 F.2d at 528.

Here, it is apparent that the Painters Union and UAW have competing interests.  Both the Painters Union and UAW seek to be the bargaining unit for the employees at the NUMMI north plant.  These unions have already engaged in AFL-CIO administrative proceedings against each other for the right to do so.  Moreover, the Painters Union did not disclaim representation until after the umpire's decision, and did so only after being directed to do so by the union's General President. Since the UAW and the Painters Union have different objectives in representing the bargaining unit at NUMMI's north plant, the Court finds that the Painters Union and UAW have distinctly different and competing interests.  UAW has established that the existing parties do not adequately represent UAW's interests.

The Court finds that UAW has a significant protectable interest at stake in this case that could be impaired by the outcome.  UAW has no other means to protect this interest, and no current party adequately represents it.  For these reasons, the Court finds UAW's intervention as of right is proper.

## II.     UAW's Permissive Intervention

Alternatively, UAW seeks to permissively intervene pursuant to Rule 24(b) which provides that a court may, in its discretion, permit intervention, "when an applicant's claim or defense and the main action have a question of law or fact in common."  Fed R. Civ. P. 24(b).  Plaintiff argues against permissive intervention on grounds that Plaintiff was not permitted to intervene in the AFL-CIO administrative proceeding therefore UAW should be precluded from intervening here.  In exercising its discretion the court "shall consider whether the intervention will unduly delay or prejudice the adjudication of the rights of the original parties."  *Id*.  Here, the Court finds that UAW's request is well-taken.

United States District Court
For the Northern District of California

1   The current action concerns the enforceability of the CBA and whether the Painters Union's

2   disclaimer of representation is valid.  That determination will affect, not only the Plaintiff, but also

3   the related dispute between the Painters Union and UAW.  Plaintiff has failed to produce evidence

4   that UAW's intervention will unduly delay or prejudice the parties.  Furthermore, the Court finds

5   that in the interest of judicial economy, it is proper to have these common issues of law and fact in

6   the same action.

7   **III.   Preliminary Injunction**

8   Plaintiff seeks a preliminary injunction to prevent the Painters Union from disclaiming

9   representation of the bargaining unit and from repudiating the CBA.  In support of its request for a

10  preliminary injunction, Plaintiff argues it will suffer immediate and irreparable harm because it will

11  be unable to assure its customer of stable and defined labor relations and a stable workforce.  In

12  response, the Painters Union and UAW first argue that this Court does not have jurisdiction to grant

13  the preliminary injunction.  Next, the UAW argues that Plaintiff has not satisfied the necessary

14  elements for a preliminary injunction.  In particular, that Plaintiff has not established a likelihood of

15  success on the merits and has not made a showing of irreparable injury.

16      **A.   Jurisdiction**

17  The Painters Union and UAW make two arguments that this Court does not have jurisdiction

18  to grant Plaintiff's request for a preliminary injunction.  First, that the designation of an exclusive

19  bargaining representative is a "representational matter" within the primary jurisdiction of the

20  National Labor Relations Board ("NLRB") pursuant to the National Labor Relations Act ("NLRA").

21  Second, that the Norris-LaGuardia Act prohibits federal courts from entering injunctions in labor

22  disputes and therefore deprives this Court of jurisdiction.  The Court addresses these arguments

23  below.

24          **1.   National Labor Relations Act**

25  The Painters Union and UAW argue that this case falls within the primary jurisdiction of the

26  NLRB because it involves a "representational issue" under the NLRA.  Plaintiff counters that this

27  Court's jurisdiction is proper because the "major issue" in this case is the alleged breach of contract,

28  and not a representational issue.

10

**United States District Court**

For the Northern District of California

"The doctrine of primary jurisdiction is a recognition of congressional intent to have matters of national labor policy decided in the first instance by the National Labor Relations Board." *United Ass'n of Journeymen v. Valley Engineers*, 975 F.2d 611, 613 (9th Cir. 1992) (quoting *Glaziers & Glassworkers Local Union No. 767 v. Custom Auto Glass Distribs.*, 689 F.2d 1339, 1342 (9th Cir. 1982)). Issues falling within the NLRB's primary jurisdiction include designation of an exclusive bargaining agent and identification of an appropriate collective bargaining unit under section 9 of the LMRA. *See Local No. 3-193 Intern. Woodworkers of Am. v. Ketchikan Pulp Co.*, 611 F.2d 1295, 1298 (9th Cir. 1980). Such "representational issues" are "more appropriately resolved by the NLRB" than by the courts, given the agency's "superior expertise." *Hotel Employees, Restaurant Employees Union, Local 2 v. Marriott Corp.*, 961 F.2d 1464, 1468 (9th Cir. 1992); *Valley Engineers*, 975 F.2d at 613.

In contrast, section 301 of the LMRA vests district courts with jurisdiction over "[s]uits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce." 29 U.S.C. § 185(a). The courts have characterized section 301 as an "exception to the primary jurisdiction doctrine . . . designed to afford the courts jurisdiction to resolve labor disputes that focused on the interpretation of the terms of the collective bargaining agreement." *Valley Engineers*, 975 F.2d at 614 (quoting *Custom Auto Glass Distribs.*, 689 F.2d at 1342-43). Although section 301 confers concurrent jurisdiction upon the NLRB and federal courts, the Ninth Circuit has "recognized that district courts 'must tread lightly' in areas of the NLRB's primary jurisdiction and 'must continue to defer when, on close examination, section 301 cases fall within the NLRB's primary jurisdiction.'" *Id*. at 613-14. To avoid "end run[s] around the NLRA" under "the guise of contract interpretation," the Ninth Circuit has drawn the jurisdictional line by asking "whether the major issues to be decided can be characterized as primarily representational or primarily contractual." *Id*. at 614 (internal quotations and citations omitted).

The current case falls on the "primarily contractual" side of the line. Stripped to essentials, it turns on a question of contract interpretation and whether, under the operative contract, the Painters Union may disclaim representation of the bargaining unit and repudiate the CBA. Thus, the matter is properly in federal court rather than before the NLRB. *Valley Engineers*, 975 F.2d at 614. The

Court first must decide on the enforceability of the CBA and whether the terms of the CBA preclude the Painters Union from disclaiming representation of the bargaining unit and from repudiating the CBA. The fact that there are "representational overtones" does not detract from the primarily contractual nature of the underlying action. *See id.*; *see also Painting and Decorating Contrs. Ass'n of Sacramento, Inc. v Painters & Decorators Joint Comm. of the E. Bay Counties Inc*., 707 F.2d 1067, 1071 (9th Cir. 1983) (stating "[s]ection 301 does not contain any requirement that the parties to an action brought thereunder must also be the parties to the allegedly breached contract . . . [j]urisdiction exists as long as the suit is for violation of a contract between a union and employer . . . .")

This case is based on a violation of a contract between a union and an employer. *See Toyota Landscape Co. Inc. v. Bldg. Material & Dump Truck Drivers Local 420, Int'l Bhd. of Teamsters*, 726 F.2d 525, 529 (9th Cir. 1984) (finding union's disclaimer violated the collective bargaining agreement as a matter of law and remanding case on the issue of damages). As a result, it is within this Court's jurisdiction to determine the enforceability of the CBA and whether the Painters Union's actions constituted a breach of the CBA. For these reason, the Court finds that its jurisdiction is proper and now turns to whether the injunctive relief sought by Plaintiff is an appropriate and available remedy.

## 2. Norris-LaGuardia Act

UAW and the Painters Union argue that the Norris-LaGuardia Act precludes the injunctive relief sought by Plaintiff. In particular, the unions argue that Plaintiff's request for injunctive relief would force the Painters Union to continue to represent the bargaining unit, in violation of section 104 of the Norris-LaGuardia Act. Plaintiff responds by arguing that the conduct to be enjoined falls outside the Norris-LaGuardia Act because the remedy does not seek to enjoin any person from engaging in any of the protected conduct described in section 104. *See* 29 U.S.C. § 104.

The Norris-LaGuardia Act limits the jurisdiction of federal courts from issuing injunctions in "any labor dispute." 29 U.S.C. § 104. The Act defines "labor dispute" as "any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of

employment, regardless of whether or not the disputants stand in the proximate relation of employer

and employee." 29 U.S.C. § 113(c).  Section 104 prescribes a list of protected acts that cannot be

enjoined.  *See* 29 U.S.C. § 104.  Section 104 reads,

> No court of the United States shall have jurisdiction to issue any
> restraining order or temporary or permanent injunction in any case
> involving or growing out of any labor dispute to prohibit any person or
> persons participating or interested in such dispute (as these terms are
> herein defined) from doing, whether singly or in concert, any of the
> following acts:
>
> (a) Ceasing or refusing to perform any work or to remain in any relation of
> employment;
>
> (b)  Becoming or remaining a member of any labor organization or of
> any employer organization, regardless of any such undertaking or
> promise as is described in section 103 of this title;
>
> ...
>
> (h) Agreeing with other persons to do or not to do any of the acts heretofore
> specified;
>
>         ...

*Id.*

The definition of a "labor dispute" is extraordinarily broad.  *See Camping Constr. Co. v.*

*Dist. Council of Iron Workers*, 915 F.2d 1333, 1342 (9th Cir. 1990) (citing *Jacksonville Bulk*

*Terminals, Inc. v. International Longshoremen's Ass'n*, 457 U.S. 702, 712-14 (1982) (citations

omitted) (a union's work stoppage, although motivated exclusively by geopolitical concerns, is a

labor dispute because "the employer-employee relationship [is] the matrix of the controversy"); *New*

*Negro Alliance v. Sanitary Grocery Co.*, 303 U.S. 552, 559-61 (1938) (finding that picketers who

were neither employees nor union organizers, and who were asserting political and social interests

rather than economic interests commonly associated with labor unions, were persons interested in a

labor dispute within the meaning of section 13).  Due to the language of the Act and the Ninth

Circuit's broad reading of the term, this Court finds that the current case involves a "labor dispute"

within the meaning of the Norris-LaGuardia Act.

Section 104 identifies the protected conduct that the courts cannot enjoin.  29 U.S.C. § 104.

Here, the unions argue that Plaintiff's requested injunction violates sections 104(a) and 104(h).

Defendants point out that Plaintiff's proposed injunction admittedly seeks to ensure a continued

United States District Court

For the Northern District of California

United States District Court
For the Northern District of California

"stable workforce" by forcing the Painters Union to continue representing its bargaining unit, thereby ensuring the Painters Members will not "ceas[e] or refus[e]" to work for Plaintiff. (Complaint, at ¶ 19.)  Plaintiffs assert that the requested injunction will not prohibit any employees from engaging in protected conduct under section 104 because the employees may still seek to strike, to decertify the Painters Union, or to engage in any other lawful concerted activity.

The Court finds that section 104 prohibits the injunction sought by Plaintiffs.  Plaintiffs seek an order "restrain[ing] and enjoin[ing] [the Painters Union] from disclaiming representation of the bargaining unit and from repudiating the CBA during its term."  (Plaintiff's Proposed Order Granting Preliminary Injunction.)  At oral argument, UAW noted that strict enforcement of the CBA would prohibit employees from striking, from picketing, and from otherwise cancelling membership in the union and therefore violates section 104.  Plaintiff's counsel implicitly conceded that the Court may need to carve out certain portions of the CBA in order to comply with the Norris-LaGuardia Act.  The Court finds the scope of Plaintiff's proposed injunction has the downstream effect of enjoining protected activity under section 104.  Thus, the Court finds Plaintiff has failed to show that this Court has jurisdiction to grant the requested relief.

Plaintiff argues that the Norris-LaGuardia Act must be read in light of section 301. However, Plaintiff fails to offer a case where an employer successfully enjoined a union from disclaiming representation of the bargaining unit and from repudiating a CBA.[3]  The Court notes that

_____

[3] The Court notes that some courts have issued injunctions in the context of arbitration agreements despite section 104's apparent outright ban.  *See Camping Const. Co.*, 915 F.2d 1333, 1343-44 (stating "[t]he courts have thus been left with the task of attempting to accommodate Norris-LaGuardia to later acts in order to create a coherent whole.  *See generally Boys Markets, Inc. v. Retail Clerk's Union, Local 770*, 398 U.S. 235, 242-53 (1970). The result has been that, in spite of what the Norris-LaGuardia Act says, the Supreme Court has held that federal courts do have jurisdiction to issue injunctions in some labor disputes, even in some of the circumstances covered by section 4's outright ban. For example, it has long been settled that federal courts have jurisdiction, in spite of the Norris-LaGuardia Act, to compel a recalcitrant employer to honor its agreement to arbitrate. *Textile Workers Union v. Lincoln Mills*, 353 U.S. 448, 457-59 (1957). Moreover, when a union refuses to honor its contractual commitment to arbitrate and instead calls a strike, a federal court may grant a prohibitory injunction against the strike, *Boys Markets*, 398 U.S. at 253-54, as long as the dispute underlying the strike is arbitrable, *Buffalo Forge Co. v. United Steelworkers*, 428 U.S. 397, 407-12 (1976); *see also Jacksonville Bulk Terminals*, 457 U.S. at 708-09.  And among the earliest of these accommodation cases were cases in which the Court held that Norris-LaGuardia does not prevent courts from issuing injunctions to enforce positive duties imposed by other federal labor statutes.  *See, e.g., Brotherhood of R.R. Trainmen v. Chicago River & Ind. Ry.*, 353 U.S. 30 (1957) (union's statutory duty to arbitrate "minor disputes" under the Railway Labor Act); *Brotherhood of R.R. Trainmen v. Howard*, 343 U.S. 768 (1952) (union's duty under RLA not to discriminate against non-union black train porters); *Graham v. Brotherhood of Locomotive Firemen & Eng'rs*, 338 U.S. 23 (1949) (union's duty under RLA, as the exclusive bargaining representative, to provide nondiscriminatory representation); *Virginian Ry. v. System Federation No. 40*, 300 U.S. 515 (1937) (employer's duty under RLA to recognize and negotiate with

the Norris-LaGuardia Act and section 301 are not inconsistent.  Courts have examined the

relationship between the Norris-LaGuardia Act and section 301 of the LMRA.

> "The Norris-La Guardia Act and § 301(a) play distinct and separate roles in national labor policy.  The Norris-La Guardia Act was enacted to remedy the indiscriminate use of injunctions as a means of disrupting the organization and progress of labor unions."  *See Boys Markets, Inc. v. Retail Clerks Union, Local 770*, 398 U.S. 235, 250-51 (1970) (citations omitted); Section 301(a), on the other hand, serves to promote industrial peace and responsibility by permitting agreements between labor organizations and employers to be enforced in federal court.  *Textile Workers Union of America v. Lincoln Mills*, 353 U.S. 448, 454-55 (1957).  Additionally, § 301(a) jurisdiction allows the development of a body of labor law that gives consistent and uniform interpretations of labor contract terms.  *See Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103 (1962).  These important purposes have consistently justified a broad interpretation of § 301(a). *See, e.g., Smith v. Evening News Association*, 371 U.S. 195, 199-200 (1962); *Seay v. McDonnell Douglas Corp.*, 427 F.2d 996, 1000-01."

*See Painting and Decorating Contractors Assoc. of Sacramento, Inc. v. Painters and Decorators Joint Comm. of the East Bay Counties*, 717 F.2d 1293, 1295 (9th Cir. 1983).

Here, it is within this Court's jurisdiction to interpret the CBA, thereby ensuring the policy

consideration for courts to give consistent and uniform interpretations of labor contract terms.

Conversely, it is not within this Court's jurisdiction to issue a preliminary injunction thereby forcing

the Painters Union to continue to serve as the bargaining unit.  This reasoning is not inconsistent

with *Toyota Landscape Co.*, where the court addressed a similar factual situation in the context of

legal remedies.  *See Toyota Landscape Co.*, 726 F.2d 527-28.  In *Toyota Landscape Co.*, the court

found that the union's disclaimer of interest in representing the employees violated the collective

bargaining agreement and remanded the case for further proceedings on the issue of *damages.  Id.* at

529 (emphasis added).  Although the Court finds that *Toyota Landscape Co.* is not controlling, the

Court notes that *Toyota Landscape Co.* would be more analogous to the current case: (1) if Plaintiffs

sought damages for the Painters Union's alleged breach of the CBA, rather than an injunction; and

(2) if Plaintiffs were able to identify substantial disruption in its labor force.

The Court finds that the Norris La-Guardia Act prohibits this Court from issuing the

preliminary injunction sought by Plaintiff.  For these reasons, the Court denies Plaintiff's motion for

the duly accredited labor representative)).

United States District Court

For the Northern District of California

1  a preliminary injunction.[4]

2  ///

3  ///

4  ///

5  ///

6  ///

7  ///

8  _____

9  [4]Although the Court finds it lacks jurisdiction, if the Court were to reach the merits of Plaintiff's request, the motion would be denied. The Court finds that on this record, Plaintiff has not met the standard to obtain a preliminary injunction. To obtain a preliminary injunction, plaintiff must show that it is "likely" to prevail on the merits. *See Ashcroft v. American Civil Liberties Union*, 542 U.S. 656, 665 (2004); *Haitian Refugee Center, Inc. v. Christopher*, 43 F.3d 1431, 1432 (11th Cir. 1995); *Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 16 (1st Cir. 1996). Moreover, a heightened burden is required where a preliminary injunction would alter the status quo, or command affirmative acts by the defendant, or afford plaintiff relief otherwise available only after a full trial. *Kikumura v. Hurley*, 242 F.3d 950, 955 (10th Cir. 2001).

Unless Congress provides otherwise, a preliminary injunction "may only be granted when the moving party has demonstrated a significant threat of irreparable injury, irrespective of the magnitude of the injury." *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999). Plaintiff "must demonstrate immediate threatened harm." *Caribbean Marine Serv. Co. v. Baldridge*, 844 F.2d 668, 674 (9th Cir. 1988). Establishing a risk of irreparable harm in the indefinite future is not enough. *See id.* The plaintiff must demonstrate potential harm which cannot be redressed by a legal or equitable remedy following trial, therefore the preliminary injunction must be the only way of protecting the plaintiff from harm. *Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3rd Cir. 1992); *see Ross-Simons of Warwick, Inc. v. Baccarat, Inc.*, 102 F.3d 12, 18 (1st Cir. 1996).

Here, Plaintiff has failed to establish irreparable harm. In particular, Plaintiff has not sufficiently described how it has been harmed and how it will continue to be harmed. Plaintiff offers only conclusions without any substantive explanation. Plaintiff states only, "[a]s a result of the Painters Union's equivocal disclaimer of interest in the NUMMI bargaining unit, MacLellan has and will continue to be harmed . . . . Now, MacLellan is left with nothing but *uncertainty*." (Declaration of Paul Rowinski ("Rowinski Decl."), at ¶ 17.) Plaintiff argues that intangible injuries are sufficient to justify an injunction. However, Plaintiff's authority is distinguishable because Plaintiff's authority contained factual records where the party seeking the preliminary injunction provided the court with more than a conclusory allegation of irreparable harm. *See Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 841 (9th Cir. 2001) (finding preliminary injunction appropriate where plaintiff established that defendant was directly causing the detention of plaintiff's goods that were specifically earmarked for specific customers); *Rent-A-Center, Inc. v. Canyon Television & Appliance Rental, Inc.*, 944 F.2d 597, 603 (9th Cir. 1991) (finding preliminary injunction appropriate where plaintiff established that defendant's actions directly impacted plaintiff's advertising efforts and goodwill); *United Healthcare Ins. Co. v. Advance PCS*, 316 F.3d 737, 741-42 (8th Cir. 2002) (finding preliminary injunction appropriate where plaintiff presented undisputed evidence and detailed description of the irreparable harm); *see also Regents of Univ. of Calif. v. Am. Broad. Co., Inc.*, 747 F.2d 511, 519-20 (9th Cir. 1984) (finding irreparable injury where plaintiffs provided detailed supporting evidence explaining the numerous ways in which they would be injured).

Plaintiff relies on *Toyota Landscape Co.*, in support of its request for a preliminary injunction. However, *Toyota Landscape Co.*, did not involve a request for a preliminary injunction and therefore does not support Plaintiff's allegation of irreparable injury. Furthermore, the Court also finds that Plaintiff has failed to establish why the alleged harm may not be sufficiently remedied by damages, as was the case in *Toyota Landscape Co.*

Additionally, Plaintiff has failed to show that the balance of hardships supports issuance of the injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F3d 832, 839- 40 (9th Cir. 2001). Here, there has been no actual harm or injury to Plaintiff caused by the Painters Union's conduct. For these reasons, the Court finds that Plaintiff has failed to establish an adequate showing of irreparable injury. Therefore, even if the Court had jurisdiction to grant Plaintiff's request for a preliminary injunction, the Court would deny the request.

**United States District Court**
For the Northern District of California

1    **CONCLUSION**

2          For the foregoing reasons, the Court **DENIES** Plaintiff's Motion for Preliminary Injunction

3    and **GRANTS** UAW's Motion to Intervene.

4

5

6

7    **IT IS SO ORDERED.**

8

9

10   Dated: October 6, 2006                                    _____

11                                                             MARTIN J. JENKINS
                                                               UNITED STATES DISTRICT JUDGE

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28